IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| DIANE BROCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-2772-JPM/tmp |
| | ) | JURY DEMANDED |
| POSITIVE CHANGES HYPNOSIS, | ) | |
| LLC, DORUS ALDERMAN, and | ) | |
| KATHY ALDERMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT & DISMISSAL

Before the Court is Defendants' Motion for Summary
Judgment, filed November 6, 2007. (Doc. 58.) In addition to
responding in opposition (Doc. 103, filed Feb. 29, 2008),
Plaintiff also filed a Motion in Limine (Doc. 64), and a Motion
to Strike (Doc. 100), to exclude certain exhibits and
allegations from Defendants' Motion for Summary Judgment.
Defendants responded to these motions and filed a Motion in
Limine of their own urging the Court to exclude the expert
testimony of Plaintiff's physician. (Doc. 105, filed Mar. 19,
2008.) The Court held a hearing on the evidentiary matters on
April 8, 2008. For the following reasons, the Court GRANTS
Plaintiff's Motion in Limine, DENIES AS MOOT Plaintiff's Motion
to Strike and Defendants' Motion to Depose, GRANTS Defendants'
Motion in Limine, GRANTS Defendants' Motion for Summary

Judgment, and DISMISSES this case with prejudice.

## I. Background

This case arises from Plaintiff Diane Brock's employment with Dorus and Kathy Alderman at Positive Changes Hypnosis, LLC ("PCH"). Plaintiff began working for PCH as a Hypnosis Sales Consultant in March of 2003. (Compl. ¶ 11.) PCH compensated Plaintiff on a commission basis, paying her 10% of the cost of every hypnosis service "program" she sold to clients. (Brock Dep. (Doc. 58-4), Vol. 1, at 84.) This arrangement generated Plaintiff roughly $100,000.00 per year. (Brock Dep. Vol. 1 at 91.) Plaintiff's compensation did not change when she worked more than forty hours in a week. (Compl. ¶ 24.)

In early 2006, another PCH employee filed a complaint with the United States Department of Labor ("DOL"), who subsequently conducted an investigation into PCH's labor and compensation practices. (Compl. ¶ 29.) The DOL determined that Plaintiff should have been classified as a non-exempt hourly employee entitled to hourly overtime wages. PCH's failure to pay Plaintiff for her overtime wages violated 29 U.S.C. § 207(a)(1). The DOL determined that PCH owed Plaintiff $4946.56 in unpaid overtime. (Compl. ¶ 32.) It was Defendants' understanding that, to comply with the DOL's classification, PCH should pay Plaintiff an hourly wage plus a lower commission or ensure that Plaintiff did not work overtime. (Kathy Alderman Decl. ¶ 20,

Doc. 58-3; Brock Dep. Vol. 1, at 182, 292.)

Plaintiff's Complaint alleges that, following this DOL determination, PCH threatened Plaintiff with decreased compensation if she collected her unpaid overtime.  On April 7, 2006, Plaintiff signed a false statement that she had received her unpaid overtime. (Brock Dep. Vol.1, at 190-92; Kathy Alderman Decl. ¶ 22.)  Plaintiff allegedly acquiesced to this arrangement because, if she did not, PCH would change her 10% commission to an hourly wage and 6% commission package.  (Brock Dep. Vol. 1, at 124, 191; Kathy Alderman Decl. ¶ 22.)

In May of 2006, Plaintiff managed PCH's office while the Aldermans vacationed.  (Brock Dep. Vol. 1, at 154; Kathy Alderman Decl. ¶ 23.)  During their absence the DOL wrote the Aldermans requiring further proof of payment of the unpaid overtime.  (Brock Dep. Vol. 1, at 155.)  Plaintiff circulated the DOL letter throughout the office.  (Brock Dep. Vol. 1, at 156, 187.)  Upon their return on June 5, 2006, the Aldermans met with Plaintiff and other staff members to discuss the DOL's requirements as well as a co-worker's report that Plaintiff referred to Kathy Alderman as a "money-grubbing bitch"; that Plaintiff "shirked" her responsibilities as manager in their absence; that Plaintiff had exceeded her deal-making authority in negotiations; and that Plaintiff had taken an impermissibly long lunch break. (Brock Dep. Vol. 1, at 173-80.)

On June 8, 2006, Kathy Alderman issued a check to Plaintiff for the unpaid overtime less applicable taxes ($3226.15) in an effort to satisfy the DOL's request for confirmation of payment. On June 9, 2006, PCH gave Plaintiff this overtime check along with her check for that pay period.  Plaintiff agreed to return the overtime payment in order to maintain her 10% commission deal.  (Kathy Alderman Apr. 9, 2008, Decl. ¶ 5; Doc. 129-3.)  On June 14, 2006, after Plaintiff cashed the overtime check and returned the check amount, Dorus Alderman asked that Plaintiff also pay PCH the $1720.42 withheld from the overtime payment in taxes.  (Brock Dep. Vol. 1, at 125; Vol. 2, at 44.)  When Plaintiff refused to do so and instead asked that she receive her overtime payment again, Dorus Alderman denied any knowledge of the matter and asked Plaintiff if she was "on drugs."  (Brock Dep. Vol. 1, at 126.)

Plaintiff alleges that after this disagreement, Defendants began discriminating against her.  (Compl. ¶ 48.)  Plaintiff alleges that by July 25, 2006, Defendants' hostility and the adverse affect it had on her relationship with her clients forced her to resign from her position with PCH.  (Compl. ¶ 52.) Plaintiff began looking for other employment in mid-July of 2006, and accepted a sales position with "LA Weight Loss" when she left PCH.  (Brock Dep. Vol. 1, at 31.)  As had been the practice at PCH in at least one other employee's case,

Plaintiff's final pay check was based on a 6% commission. (Brock Dep. Vol. 1, at 234; Kathy Alderman Decl. ¶¶ 7-10.)

Another PCH employee, Keith Haynie, also left PCH in the wake of the DOL determinations. Unlike Plaintiff, Keith Haynie did not leave voluntarily but was fired and escorted out of PCH by Bartlett, Tennessee, police officers. (Haynie Dep. 14-16; Brock Dep. Vol. 1, at 318-20.) On July 29, 2008, after her husband was fired, Kathie Haynie met with Dorus Alderman. (Haynie Dep. 16.) At that meeting Dorus Alderman suggested that the behavior that lead to Keith Haynie's firing was the result of an inappropriate romantic connection to Plaintiff. (Id. at 36-41.)

On September 9, 2006, Plaintiff received $3226.15 from PCH and executed a DOL receipt releasing all claims against PCH under § 16(b) of the Fair Labor Standards Act. (Brock Dep. Ex. 8 (Doc. 58-4) at 44.) In October of 2007, PCH ceased its business operations. (Kathy Alderman Decl. ¶ 3.)

On November 14, 2006, Plaintiff filed the instant action, seeking relief for retaliation for protected activity in violation of 29 U.S.C. § 215(a)(3); failure to pay commissions in violation of Tenn. Code Ann. § 47-50-114, et seq. ("Commission Statute"); slander and defamation in violation of Tenn. Code Ann. § 29-24-101, et seq. and Tennessee common law; and intentional infliction of emotional distress. The Court

dismissed Plaintiff's Commission Statute claim in its Order Granting Defendants' Motion for Partial Judgment on the Pleadings.

## II. Analysis

### A. Evidentiary Matters

#### 1. Farrington Declaration

Plaintiff seeks to exclude the declaration of Brian Farrington because it is irrelevant and, therefore, inadmissible pursuant to Federal Rule of Evidence 402.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by [the Federal Rules of Evidence], or by other rules prescribed by the Supreme Court pursuant to statutory authority.  Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.

When determining whether expert testimony is relevant, the Court applies the standards of Rule 401 to establish "whether proffered expert testimony is relevant, i.e., whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*Amorgianos v. Nat'l. R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)(citations omitted); *see also* *Beck v. Haik*, 377 F.3d 624, 637 (6th Cir. 2004)(holding that expert testimony must meet the general evidentiary relevance requirements as well as the specific expert testimony requirements of Rule 702). Whether to exclude expert opinion under Rules 401 or 402 is left to the sound discretion of the trial court. *Beck*, 377 F.3d at 636 (*citing* *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004)).

Farrington's opinion that the DOL investigation should have concluded that Plaintiff was exempt from overtime under 29 U.S.C. § 207(i) does not have any tendency to show that the alleged violations of the FLSA were more or less probable. Defendants did not challenge the DOL's findings regarding Plaintiff's unpaid overtime and agreed to comply with all the DOL's recommendations. Farrington's opinions may be relevant to an appeal of those findings and recommendations, but Defendants have not brought such an appeal. Defendants argue that the Farrington Declaration supports their position that a "non-coerced mutually agreed upon repayment of money to an employer" does not violate the FLSA. (Defs.' Resp. (Doc. 79) at 1.) However, Plaintiff has not alleged that the agreement to return her overtime payment violated the FLSA. Rather, Plaintiff claims that her decision to abide by the DOL's recommendations

and not the side agreement was a protected activity under the FLSA and, therefore, an impermissible ground for adverse employment action. The Farrington Declaration has no relevance to the evaluation of this argument. Accordingly, the Court GRANTS Plaintiff's Motion in Limine as to Brian T. Farrington's opinion. In light of the inadmissibility of the Farrington Declaration, the Court DENIES AS MOOT Defendants' Motion to Take Farrington's Deposition.

### 2. Settlement Negotiation Records

Plaintiff seeks to exclude correspondence between the parties' respective counsel because they contain settlement negotiations. Federal Rule of Evidence 408 prohibits the use of compromises and offers to compromise to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount. See Stockman v. Oakcrest Dental Ctr., 480 F.3d 791 (6th Cir. 2007)(holding that "where a party has raised an issue going to the validity or amount of a claim, that is insufficient for admitting settlement offers that go to the same issue because to do so violates Rule 408 on its face"). However, this rule does not require exclusion if the evidence is offered for purposes not prohibited by Rule 408(a). Examples of permissible purposes include proving a witness's bias or prejudice, negating a contention of undue delay, and proving an

effort to obstruct a criminal investigation or prosecution. <u>See</u>
Fed. R. Evid. 408(b).

Exhibits K and L to Defendants' Motion contain an
unconditional offer of reinstatement, which Defendants admit is
offered either to limit Plaintiff's back-pay claim or to render
it invalid. (Defs.' Resp. 4.) Defendants contend that the
offer of unconditional reinstatement is admissible because it is
relevant to evaluating Plaintiff's alleged damages, relying on
<u>Pierce v. F.R. Tripler & Co.</u>, 995 F.2d 820 (2d Cir. 1992).
However, in <u>Pierce</u> all offers made in the context of settlement
negotiations were excluded, and so this argument is without
merit. <u>Id.</u> Accordingly, the Court GRANTS Plaintiff's Motion in
Limine as to Exhibits K and L because the unconditional offer of
reinstatement and the feasibility of reinstatement were offered
to demonstrate that Plaintiff's back pay claim must be dismissed
or limited.

Plaintiff seeks to strike certain items, in particular
items 50, 51, 77, 78, and 79, from Defendants' statement of
undisputed facts. Because these items are contained in the
excluded exhibits, the Court DENIES Plaintiff's Motion to Strike
AS MOOT.

### 3. Leite Affidavit

Federal Rule of Evidence 702 grants an expert witness "wide
latitude to offer opinions, including those that are not based

on firsthand knowledge or observation," relaxing the usual requirement that witnesses testify from firsthand knowledge. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-92 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999)(extending Daubert to encompass all expert opinion testimony).  Rule 702 allows an expert witness this latitude on the "assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." Daubert, 509 U.S. at 592.  However, Rule 702 also obligates a trial judge to exercise a "gatekeeping" role to admit only expert opinion testimony that is both reliable and relevant. Daubert, 509 U.S. at 589; Kumho Tire, 526 U.S. at 147.  "The relevance requirement directs that there be a 'fit' between the testimony and the issue to be resolved by the trial.  The reliability requirement is designed to focus on the methodology and principles underlying the testimony."  United States v. Pollard, 128 F. Supp. 2d 1104, 1116 (E.D. Tenn. 2001)(citing United States v. Bonds, 12 F.3d 540, 555-56 (6th Cir. 1993).

A qualified expert witness "may testify if his 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,' provided that '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied

the principles and methods reliably to the facts of the case.'"
Alfred v. Mentor Corp., 479 F. Supp. 2d 670, 672 (W.D. Ky. 2007)
(quoting Fed. R. Evid. 702).

> The inquiry envisioned by Rule 702 is . . . a flexible
> one.  Its overarching subject is the scientific
> validity and thus the evidentiary relevance and
> reliability of the principles that underlie a proposed
> submission.  The focus, of course, must be solely on
> principles and methodology, not on the conclusions
> that they generate.

Daubert, 509 U.S. at 594-95.  The court must "make certain that
an expert, whether basing testimony upon professional studies or
personal experience, employs in the courtroom the same level of
intellectual rigor that characterizes the practice of an expert
in the relevant field."  Kumho Tire, 526 U.S. at 152.

At the hearing on their Motion in Limine, Defendants
challenged the reliability of Dr. Leite's opinions.  Defendants
argued that because Dr. Leite's notes from his therapy sessions
with Plaintiff did not correspond chronologically to the facts
asserted in the case, his opinions regarding Plaintiff's mental
health were unreliable.  Specifically, Dr. Leite's session notes
from June 8, 2006, indicated that Plaintiff had already returned
the unpaid overtime compensation to Defendants, when the record
shows that Plaintiff did not receive her overtime check until
June 9, 2006, and did not cash the check and return those funds
to Defendants until June 14, 2006.  In keeping with this version
of events, Dr. Leite's June 15, 2006, session notes described

Plaintiff as feeling much better about her office conflicts,
when the rest of the record indicates that Plaintiff had only
just experienced her first serious disagreement with Defendants
the day before.  Dr. Leite could not account for the
inconsistency between his session notes and the record of events
in this case.  Dr. Leite's session notes were the sole basis for
his opinion regarding the cause of Plaintiff's emotional
distress.  Accordingly, the Court finds that Dr. Leite's expert
opinion regarding the cause of Plaintiff's emotional distress
was not the product of a reliable methodology as required by
Federal Rule of Evidence 702 and GRANTS Defendants' Motion in
Limine as to his affidavit.[1]  This determination would not bar
Dr. Leite from testifying at trial as a fact witness.

## B. Summary Judgment

### 1. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary
judgment is proper "if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that the movant
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986).  So long as the movant has met its initial burden of

---

[1] Defendants also move for the exclusion of Plaintiff's affidavit.  The Court
does not rely on Plaintiff's affidavit in its analysis of Defendants' Motion
for Summary Judgment.  Accordingly, the Court DENIES Defendants' Motion in
Limine as to Plaintiff's affidavit AS MOOT.

"demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986) see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must – by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also Abeita v. TransAm. Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). However, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.'" Street v. J.C. Bradford & Co., Inc., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In essence, the inquiry is "whether

the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one
party must prevail as a matter of law." Id. at 251-52.

### 2. FLSA Claims

The anti-retaliation provision of the FLSA provides that an
employer is prohibited from "discharg[ing] or in any other
manner discriminat[ing] against [an] employee because such
employee has filed [a] complaint or instituted . . . any
proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). The
burden-shifting analysis in McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973), applies to an FLSA claim of retaliation.
See, e.g., Adair v. Charter County of Wayne, 452 F.3d 482, 489
(6th Cir. 2006). To establish a prima facie case of
retaliation, an employee must prove that (1) she engaged in a
protected activity under the FLSA; (2) her exercise of this
right was known by the employer; (3) thereafter, the employer
took an employment action adverse to her; and (4) there was a
causal connection between the protected activity and the adverse
employment action. See, e.g., Williams v. Gen. Motors Corp.,
187 F.3d 553, 568 (6th Cir. 1999). Such a prima facie showing
of retaliation "creates a presumption that the employer
unlawfully discriminated against the employee." St. Mary's
Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). If the plaintiff
establishes a prima facie case, the burden then shifts to the

defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination. Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 883 (6th Cir. 1996).

### a. Protected Activity

Plaintiff claims that Defendants discriminated against her because she asked Defendants for the return of her overtime payment. Defendants argue that Plaintiff was not engaged in any protected activity under the FLSA because she did not instigate or cooperate with the DOL action and because she did not bring her decision to keep her overtime compensation to the DOL for enforcement. However, an employee need not file a formal complaint to engage in protected activity. Rather, "it is the assertion of statutory rights" that triggers protection under the FLSA's anti-retaliation provision. Fox v. Eagle Distrib. Co., 510 F.3d 587, 591 (6th Cir. 2007)(quoting EEOC v. Romeo Cmty. Sch., 976 F.2d 985, 989 (6th Cir. 1992)(citing Love v. RE/MAX of Am., Inc., 738 F.2d 383, 387 (10th Cir. 1984))); see also EEOC v. White & Son Enters., 881 F.2d 1006, 1010-11 (11th Cir. 1989).

In this case, when Plaintiff changed her mind about
returning her overtime payment to Defendants she was informally
asserting her statutory right to overtime compensation under 29
U.S.C. § 207(a)(1).  See Brennan v. Maxey's Yamaha, Inc., 513
F.2d 179, 180-81 (8th Cir. 1975)(finding that refusal to
participate in an overtime repayment scheme was protected under
the FLSA).  There is no dispute that Defendants knew of
Plaintiff's reassertion.  Accordingly, Plaintiff has satisfied
the first two elements of her prima facie case.

### b. Materially Adverse Employment Action

The adverse employment action requirement in the
retaliation context is not limited to an employer's actions that
solely affect the terms, conditions, or status of employment, or
only those acts that occur at the workplace.  See Hawkins v.
Anheuser-Busch, Inc., 517 F.3d 321, 345 (6th Cir. 2008)(citing
Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).
The retaliation provision instead protects employees from
conduct that would have "dissuaded a reasonable worker" from
engaging in the protected activity.  Id.  However, anti-
retaliation protections do "not set forth a general civility
code for the American workplace."  Burlington, 548 U.S. at 68
(quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75,
80 (1998)).  "[N]ormally petty slights, minor annoyances, and

simple lack of good manners will not" deter a reasonable worker from asserting their statutory rights.  Id.

Defendants argue that because Plaintiff did not incur a diminution in compensation, a disciplinary action, or a transfer or change in job title, she cannot support her claim of retaliation.  In response, Plaintiff submits three arguments to support her retaliation claim: (1) that Defendants asked Plaintiff if she was "on drugs," publicly berated her, and accused her of engaging in an extra-marital affair with a co-worker; (2) that Defendants threatened to reduce her salary from 10% commissions to a combination of hourly and commission-based wages; and (3) that Plaintiff was constructively discharged.

Plaintiff's first argument is without merit.  The staff meeting at which Plaintiff alleges she was publicly berated occurred on June 5, 2006, four days before Plaintiff received her overtime payment and more than a week before she chose to assert her right to keep that payment.  (Brock Dep. Vol. 1, at 173-80.)  Likewise, the conversation in which Dorus Alderman suggested that Keith Haynie harbored romantic feelings for Plaintiff occurred after Plaintiff had already left PCH. (Haynie Dep. 16.)  Finally, Dorus Alderman's question to Plaintiff as to whether she was "on drugs" is not, by itself, conduct that would have "dissuaded a reasonable worker" from engaging in the protected activity.  In her Response, Plaintiff

notes that she and the Aldermans enjoyed a close personal relationship and that her employers were aware of her "very fragile and very emotional" condition. (Pl.'s Resp. 15.) During the Daubert hearing, Plaintiff's psychologist Dr. Leite testified that Plaintiff was regularly taking various anti-anxiety prescription medications in 2006. In light of these circumstances, Dorus Alderman's question does not constitute an adverse employment action. See Burlington, 548 U.S. 69 ("Context matters. 'The real social impact of work-place behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'"(quoting Oncale, 523 U.S. at 81-82)).

Plaintiff's second argument, that Defendants threatened to alter the terms of her compensation when she requested her overtime payment, is also insufficient to satisfy the third element of her prima facie case. "Mere threats of alleged adverse employment action are generally not sufficient to satisfy the adverse action requirement." Mitchell v. Vanderbilt Univ., 389 F.3d 177, 182 (6th Cir. 2004)(holding that because the defendant's proposal to reduce the plaintiff's pay, alter his employment status, and reassign him were never implemented, the plaintiff had not suffered an adverse employment action); see also Chandler v. LaQuinta Inns, Inc., 264 F. App'x 422, 425-

26 (5th Cir. 2008)(finding a threat of discharge insufficient to establish an adverse employment action)(citing Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995)).  There is no dispute that Defendants never carried out their threat to change Plaintiff's compensation, and the threat to do so does not constitute an adverse employment action.

Plaintiff's third and final argument, that she was constructively discharged, also fails to satisfy the third element of her prima facie case.  Plaintiff may establish an adverse employment action by demonstrating that she was constructively discharged.  See Kocsis v. Multi-Care Mgmt., 97 F.3d 876, 886 (6th Cir. 1996).  To demonstrate a constructive discharge, Plaintiff must adduce evidence to show that the employer deliberately created intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit.  Logan v. Denny's, Inc., 259 F.3d 558, 568-69 (6th Cir. 2001)(quoting Moore v. KUKA Welding Sys., 171 F.3d 1073, 1080 (6th Cir. 1999)).  "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined."  Moore, 171 F.3d at 1080 (citing Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982)).  Under this standard, Plaintiff has failed to create any genuine issue of material fact supporting her allegation of constructive discharge.  Plaintiff's assertion

that "Defendants take their Plaintiff as they find her" is without merit. (Pl.'s Resp. 15.) In her deposition Plaintiff testified that she continued to have "pleasant conversations" with the Aldermans during June and July of 2006, but that PCH's office staff "ignored" her "completely" during that time, and that she "walked out" because "[n]o one was talking to [her] anymore." (Brock Dep. Vol. 1, at 299-300.) Plaintiff testified that this treatment did not impact her ability during those months to continue making strong sales. (Id. at 300.) Though her strained relationships with her co-workers may have made PCH an uncomfortable working environment, there is no dispute that Plaintiff was able to tolerate this condition and maintain her regular program sales levels during the summer of 2006.

Plaintiff has failed to establish any adverse employment action in this case. Neither Defendants' threatened compensation adjustment nor their behavior following Plaintiff's request to retain her overtime payment are sufficient to establish a prima facie case of discrimination under 29 U.S.C. § 215(a)(3). Accordingly, Plaintiff's retaliation claim fails as a matter of law, and the Court GRANTS Defendants' Motion for Summary Judgment as to her claim under the FLSA.[2]

---

[2] Even if Plaintiff could produce evidence of a materially adverse employment action, her FLSA claim would still fail because she also failed to refute Defendants' legitimate non-discriminatory reason for threatening to change her commission rate, which is that the DOL investigators recommended such a change in compensation as a compliance measure.

### 3. Defamation Claims

Tennessee Code Annotated § 29-24-101 provides a cause of action for "[a]ny words written, spoken, or printed of a person, wrongfully and maliciously imputing to such person the commission of adultery or fornication."  The basis for an action for defamation under the Tennessee common law "is that the defamation has resulted in an injury to the person's character and reputation."  <u>Davis v. The Tennessean</u>, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001).  The Tennessee Supreme Court described the elements necessary to establish a prima facie case of defamation as (1) a statement, (2) published by a party with knowledge that the statement was false and defaming to the other or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement.  <u>Sullivan v. Baptist Mem'l Hosp.</u>, 995 S.W.2d 569, 571 (Tenn. 1999).  "Publication" is a term of art meaning the communication of defamatory matter to a third person.  <u>Id.</u>

The words upon which Plaintiff bases her defamation claims were made by Dorus Alderman to Keith Haynie's wife on July 29, 2006, following Haynie's termination from PCH.  In that conversation Dorus Alderman made the following statements regarding Plaintiff:

"I think Keith is in love with her."

> "His whole conversation that day was about Diane. I'll tell you what, there's got to be – there's a lot more there than just two people working together."

> "I don't know if there's anything sexual, but I think personally that Keith is infatuated or more. But that's just my opinion."

> "Everyone else here will pretty much tell you the same thing."

> "I've thought about it long and hard. This is the only thing that – all these other things don't make any sense. Keith has better sense. This keeps coming up, and I hope I'm wrong."

> "This is where it's got to be coming from, and believe me, Diane is so shallow, I'm sure it's not reciprocal."

> "And I doubt if she would do anything. I don't think Keith would either."

(Haynie Dep. 36-73.) None of these statements qualify as the kind of false factual assertion from which either a statutory or common law claim for defamation may arise. Plaintiff has failed to produce any evidence that Dorus Alderman's opinion as to Keith Haynie's feelings for her were false. Plaintiff claims that "Dorus Alderman told Kathie Haynie that [she] was having an affair with Mrs. Haynie's husband Keith," but this argument is not supported by the resord. (Pl.'s Resp. 9 (<u>citing</u> Compl.).) Without evidence of some false and injurious statement, Plaintiff cannot sustain her defamation claims. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment as to

Plaintiff's defamation claims pursuant to Tenn. Code Ann. § 29-24-101 and Tennessee common law.

### 4. Intentional Infliction of Emotional Distress Claim

To sustain a cause of action for intentional infliction of emotional distress, Plaintiff must establish that (1) the conduct complained of was intentional or reckless; (2) the conduct was so outrageous that it is not tolerated by a civilized society; and (3) the conduct resulted in serious mental injury. Lourcey v. Estate of Scarlett, 146 S.W.3d 48, 51 (Tenn. 2004); Bain v. Wells, 936 S.W.2d 618, 622 n.3 (Tenn. 1997). The second element requires a plaintiff to show that "the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Lourcey, 146 S.W.3d at 51; see also Bain, 936 S.W.2d at 623. The third element requires emotional distress that is "so severe that no reasonable [person] could be expected to endure it." Levy v. Franks, 159 S.W.3d 66, 85 (Tenn. Ct. App. 2004). The serious mental injury or emotional distress must be more than "the transient and trivial emotional distress [that] is a part of the price of living among people." Id.

Plaintiff has failed to even allege, much less support, any facts that satisfy these elements. The facts of this case

reveal an inter-personal office conflict involving an emotionally vulnerable individual. This conflict resulted in hurt feelings, uncivil behavior, and Plaintiff's eventual departure from PCH. However, there is no evidence that Defendants engaged in any outrageous conduct or that any of their conduct resulted in a serious mental injury. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's intentional infliction of emotional distress claim.

**IV. Conclusion**

For the reasons stated above, the Court GRANTS Plaintiff's Motion in Limine to exclude Brian Farrington's expert opinion and those exhibits relating to the parties' settlement negotiations. The Court also GRANTS Defendants' Motion in Limine as to Dr. Leite's expert testimony. Finding no dispute of material fact, the Court GRANTS Defendants' Motion for Summary Judgment and DISMISSES Plaintiff's case with prejudice. As a result of these determinations, the Court also DENIES AS MOOT Plaintiff's Motion to Strike and Defendants' Motion in Limine to exclude Plaintiff's Affidavit.

SO ORDERED this 26th day of June, 2008.


s/  JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE